UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEANNE GRIFFIN-MOORE,

       Plaintiff,

v.                                        Case No. 8:11-cv-2000-T-24TBM

THE CITY OF BROOKSVILLE,
FLORIDA,

       Defendant.
_____/

**ORDER**

This cause comes before the Court on cross motions for summary judgment filed by

Defendant The City of Brooksville, Florida ("the City") and by Plaintiff Jeanne Griffin-Moore.

(Dkts.37, 38, 39, 44, 45.)  Griffin-Moore, a former employee of the City, has sued to recover

unpaid overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

("FLSA").  The City, however, contends that it is entitled to summary judgment because Griffin-

Moore was an administrative exempt employee under the FLSA.  As explained below, the City is

entitled to summary judgment on Griffin-Moore's overtime claim.

**I.      Background and Facts**

The following undisputed facts are established in the record: On February 9, 2009,

Griffin-Moore was hired by the City into the newly-created management analyst position.

During her employment with the City, Griffin-Moore reported directly to the City Manager,

Jennene Norman-Vacha.  Norman-Vacha worked with Human Resources to create the

management analyst position, and reviewed the job duties of the position to ensure that the

position qualified as administrative exempt.  Griffin-Moore was paid on a salary basis, receiving

gross wages of $1,286.40 bi-weekly, throughout her employment.

According to Norman-Vacha, Griffin-Moore worked independently and exercised discretion in her everyday tasks.  Norman-Vacha described Griffin-Moore's duties as significant and important to the City.  Griffin-Moore made notes of the duties she performed in her hand-written "daily logs," or "dailies."  Examples of Griffin-Moore's duties included:

- participating in the grant writing process, including finding grants, researching information for the grants, working with grant writers to prepare the grants, and shepherding them through the approval process;

- gathering information for the City's annual report, and helping with budget analysis;

- coordinating community outreach projects, such as a Chamber event and events to encourage citizens to participate in Census 2010;

- assisting in the development of the City's recycling program and obtaining a partnership with Wal-Mart for the recycling program; and

- working to obtain a grant relating to, and national recognition for, Tom Varn Park as a trail head.

In her role as management analyst, Griffin-Moore also performed some manual work, such as cleaning coffee mugs, making coffee, cleaning the office, and serving food at meetings.

Once Griffin-Moore's work resulted in the national recognition of Tom Varn Park, she asked Norman-Vacha if she could go to Chicago to attend a reception honoring the recipients, as the City's representative.  Norman-Vacha denied the request.  Shortly thereafter, on June 7, 2011 and while on medical leave, Griffin-Moore filed a grievance against Norman-Vacha.  In her

grievance, Griffin-Moore alleged that Norman-Vacha had cursed at her during an exchange over the Chicago trip. She also alleged that she was not being paid overtime compensation.

The City hired an outside consultant to investigate Griffin-Moore's grievance. Griffin-Moore declined to participate in the investigation. After interviewing witnesses, the consultant concluded that Griffin-Moore's allegations were unsubstantiated and agreed with Norman-Vacha's determination that Griffin-Moore had been working in an administrative exempt position.

On June 24, 2011, Human Resources Specialist Telina Dowdell received notification from Griffin-Moore's workers' compensation physician that cleared Griffin-Moore to return to work. After numerous unsuccessful attempts to contact Griffin-Moore regarding the status of her intent to resume working, the City terminated Griffin-Moore's employment, effective August 31, 2011. Griffin-Moore filed the present Complaint on September 1, 2011.

## II.    Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Id.*

When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories,

and admissions on file, designate specific facts showing there is a genuine issue for trial. *Id.* In

determining whether there is a "genuine" issue, the inquiry is "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that one

party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52,

106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

### III.    Discussion

The parties filed cross motions for summary judgment.  The City argues that it is entitled

to summary judgment in its favor because Griffin-Moore exercised discretion and independent

judgment on significant matters for the City, and therefore, she was an administrative exempt

employee and was not entitled to overtime compensation.  Alternatively, the City seeks a

judgment that a two year–not a three year–statute of limitations governs this case, and that the

appropriate overtime calculation method is the half-time rate–not the time-and-one-half rate.

Griffin-Moore also moved for partial summary judgment.  She seeks a partial judgment that the

administrative exemption does not apply.

The relevant law was summarized by the Eleventh Circuit in *Rock v. Ray Anthony*

*Intern., LLC*, 380 Fed. Appx. 875, 877 (11th Cir. 2010):

> If an employee works more than forty hours in a week, the employee must be
> compensated at least time-and-a-half for each hour over forty.  29 U.S.C. §
> 207(a)(2).  However, if the employee works in a "bone fide executive,
> administrative, or professional capacity," then the overtime pay requirements do
> not apply.  *Id.* § 213(a)(1).  For the administrative exemption to apply, an
> employee must (1) earn no less than $455 per week, (2) have primary duties that
> involve "the performance of office or non-manual work directly related to the
> management or general business operations of the employer or the employer's
> customers," and (3) exercise "discretion and independent judgment with respect
> to matters of significance" in performing his primary duties.  29 CF.R. §
> 541.200(a)(1)–(3).

> The employer bears the burden of proving that an employee is exempt from overtime payments. *Atlanta Prof'l Firefighters Union, Local 134 v. City of Atlanta*, 920 F.2d 800, 804 (11th Cir, 1991). FLSA provisions are to be interpreted liberally in the employee's favor and its exemptions construed narrowly against the employer. *See Birdwell v. City of Gadsden*, 970 F.2d 802, 805 (11th Cir. 1992).

While the determination of what duties a plaintiff performed is a factual one, whether the plaintiff was an administrative exempt employee for having performed those duties is decided by the Court as a matter of law. *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590 (11th Cir. 1995).

**A.     Griffin-Moore was a Salaried Employee Earning More than $455 per Week.**

The first criterion of the administrative exemption requires that the plaintiff be "[c]ompensated on a salary or fee basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities." 29 C.F.R. § 541.200(a). The City argues–and Griffin-Moore concedes–that her employment complies with this provision. Griffin-Moore was paid on a salary basis, and was paid $1,286.40 bi-weekly, which is equivalent to $643.20 per week.

**B.     Griffin-Moore's Primary Duty was Office Work Directly Related to the Management or General Business Operations of the City.**

The second criterion of the administrative exemption is that the employee's "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.200(a). "Primary duties" are those duties which are an employee's "principal, main, major, or most important dut[ies]' when analyzed in light of all the facts, such as 'the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; [and] the employee's relative freedom from direct supervision.'"

5

*Juback v. Radioshack Corp.*, No. 8:08-cv-768-T-24 TBM, 2009 U.S. Dist. LEXIS 39016, at *5-6

(M.D. Fla. May 6, 2009) (quoting 29 C.F.R. § 541.700(a)). "If an employee spends more than

fifty percent of [her] time performing exempt work, [she] will generally be considered exempt

from overtime compensation." *Id.* (citing 29 C.F.R. § 541.700(b)). "Office or non-manual work

directly related to the management or general business operations of the employer" includes

"work in functional areas such as . . . budgeting . . . marketing . . . research . . . public relations,

governmental relations . . . and similar activities." 29 C.F.R. § 541.201(b).

Griffin-Moore had an office in City Hall, where she performed mostly office work. She

performed work in the functional areas noted above, including budgeting, where she participated

in the preparation of grants to obtain funding for the City. She performed marketing work,

which included drafting the content of flyers distributed to citizens in their utility bills. Her

work involved researching the operations of other cities and finding grants. Her work also

included coordinating and participating in community outreach events, including a Chamber

function and the City's Census 2010. Griffin-Moore also worked in the area of government

relations, preparing reports to inform legislators of City projects in order to garner support and

funding.

In an effort to demonstrate that the administrative exemption does not apply, Griffin-

Moore points to the fact that she performed manual work, such as cleaning coffee mugs, making

coffee, cleaning the office, and serving food at meetings. Griffin-Moore performed some of

these tasks daily. However, the undisputed record, including Griffin-Moore's own daily logs,

reveals that this manual work was not Griffin-Moore's primary duty. Griffin-Moore was

employed as a "management analyst" who reported directly to the City Manager on certain

projects in the areas of budgeting, marketing, research, and public and government relations.

### C. Griffin-Moore Exercised Discretion and Independent Judgment with Respect to Matters of Significance.

The third criterion of the administrative exemption is that the employee exercises "discretion and independent judgment with respect to matters of significance" in performing her primary duties. 29 CF.R. § 541.200(a)(3). The following factors are relevant to the inquiry: "whether the employee carries out major assignments in conducting the operations of the business[,] . . . whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business[,] . . . [and] whether the employee investigates and resolves matters of significance on behalf of management." 29 U.S.C. § 541.202(b). "[T]he ultimate question is whether the employee has the ability 'to make an independent choice, free from immediate direction or supervision.'" *Rock*, 380 Fed. Appx. at 879 (citations omitted).

As Griffin-Moore's supervisor and the City Manager, Norman-Vacha assigned Griffin-Moore projects. Norman-Vacha testified that Griffin-Moore "would be given a project and the project would be for her to put the project together without direct supervision and without direct task-ordered list." Norman-Vacha would give Griffin-Moore "direction in general terms or a specific task or a project to do without a checklist or constant follow-up and supervision of each task that would comprise that. Normal functions wouldn't require daily direction from a supervisor." Such projects included research projects and special projects. Norman-Vacha further testified that "everything [Griffin-Moore] did was significant. Everything she did was important. Every project she worked on had a purpose, was part of what we used in how we moved forward, how we made decisions."

Two examples of significant projects that Griffin-Moore worked on included the Tom Varn Park project and the recycling project. Griffin-Moore researched what other cities were doing with their resources and how they were obtaining funding. One of the cities Griffin-Moore researched was the City of Inverness. Griffin-Moore visited with the City of Inverness and gathered information concerning how that city obtained grant funding, particularly in the area of parks and trails. According to Norman-Vacha, Griffin-Moore took some ideas from the City of Inverness and "ran with [them]."

Specifically, Griffin-Moore used what she learned from the City of Inverness to obtain grants and other funding by getting the Tom Varn Park established as a trail head. She found grants for the City that Norman-Vacha previously was not aware of. Griffin-Moore's efforts with Tom Varn Park resulted in the park being named one of two parks in the State of Florida to receive national recognition as a trail head.

Griffin-Moore also worked to develop the City's recycling program. Griffin-Moore recommended that the City utilize an outside vendor for its recycling. She also met with businesses that could assist the City in moving toward a single stream recycling process, and pulled contract information in anticipation of getting them to work with the City. Griffin-Moore also worked to get Wal-Mart to partner with the City on its recycling project.

As evidence that the administrative exemption does not apply to her, Griffin-Moore points to testimony from Norman-Vacha in which she stated that Griffin-Moore's job duties were "coordinating, preparing reports, preparing analysis, research information." Griffin-Moore argues that this list suggests that her primary duty was, at most, working as a "helper on specified projects as requested." She furthermore argues that it was her "understanding" that she

8

"was going to work as directed by the City Manager, whatever that entailed."

The Court rejects this argument. First, Griffin-Moore has mis-characterized the record concerning Norman-Vacha's testimony. Norman-Vacha offered that list of functions in response to the question, "Is there anything else you can think of that [Griffin-Moore] did as far as duties?" As detailed above, Norman-Vacha testified extensively about Griffin-Moore's job duties and the projects she worked on. Norman-Vacha did not testify that Griffin-Moore's primary duty was a "helper." Rather, she testified that Griffin-Moore worked in several functional areas, including budgeting, marketing, research, and public and governmental relations, that such work was "significant" and "important," and that she worked without daily direction from Norman-Vacha.

Furthermore, what Griffin-Moore's understanding of her job was is not dispositive of whether the administrative exemption applies. Rather, the applicability of the exemption depends on what her job duties actually were, and whether she exercised discretion and independent judgment in performing those duties. There is no disputed issue of material fact that Griffin-Moore was paid more than $455 per week, that her primary duties involved non-manual work directly related to the City's operations, and that she exercised discretion and independent judgment with respect to significant matters.

## IV.    Conclusion

The undisputed record shows that Griffin-Moore worked as an administrative exempt employee under the FLSA, and therefore, was not entitled to receive overtime wages. Accordingly, the City's Motion for Summary Judgment (Dkt. 37) is **GRANTED**, and Griffin-Moore's Motion for Partial Summary Judgment (Dkt. 39) is **DENIED**. The Clerk is directed to

enter judgment in favor of Defendant The City of Brooksville, Florida, and against Plaintiff

Jeanne Griffin-Moore.  The pretrial conference previously scheduled for March 14, 2013 is

hereby cancelled, and this case is removed from the Court's April 2013 trial calendar.

Furthermore, the following motions are **DENIED AS MOOT**: the City's Motion to

Strike and Motion *in Limine* (Dkt. 40); the City's Motion to Compel Discovery Responses and

for Sanctions (Dkt. 47); and the City's Motion to Dismiss as Sanction for Evidence Fabrication

(Dkt. 49).

**DONE AND ORDERED** at Tampa, Florida, this 5th day of March, 2013.

Copies to:
Counsel of Record

SUSAN C. BUCKLEW
United States District Judge